UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JERRY LEE WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:15-cv-00288-JMS-DKL |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**Entry Granting Defendant's Motion for Summary Judgment
and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the defendant's motion for summary judgment [dkt. 33] is **granted.**

## I.  Background

The plaintiff in this Federal Tort Claims Act ("FTCA") action is Jerry Lee Ward ("Mr. Ward"). The defendant is the United States of America. Mr. Ward alleges in his complaint that the defendant United States of America was negligent in failing to provide proper follow-up treatment for his fractured right eye orbit and other contusions while he was incarcerated at the FCI-Terre Haute. He seeks compensatory damages.

More specifically, Mr. Ward alleges that Bureau of Prisons ("BOP") medical staff was negligent by (1) failing to bring him back to the hospital for surgery in the time frame requested by an emergency room doctor, and (2) failing to give him a second MRI to see how his face healed. He further contends that, because of this negligence, he experienced misalignment of his face, nerve pain and irritation, and stress.

The defendant seeks resolution of Mr. Ward's claims through the entry of summary judgment. Mr. Ward has not opposed the motion.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

As noted, Mr. Ward has not opposed the motion for summary judgment. The consequence of his failure to do so is that he has conceded the defendant's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## III. Discussion

### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Ward as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150

(2000).

Mr. Ward was incarcerated at FCI Terre Haute from June 2011 through May 2016. On July 27, 2013, he was in the recreation yard when he was hit in the right side of his face by a softball. Mr. Ward was brought to Health Services via wheelchair. Mr. Ward reported to RN Corey Pointer that he did not pass out, but that he did fall. There was swelling noted to Mr. Ward's right cheek and around his right eye and two minor abrasions to his right cheek below the eye. Mr. Ward complained of right jaw pain and stated that it felt as if his right side teeth were pushed in. He had a nose bleed and was alert and oriented times three. Mr. Ward also complained of severe pain when the right side of his face was touched, especially around the right eye. Mr. Ward was sent to the emergency room at a local hospital, Union Hospital in Terre Haute, Indiana, via government vehicle to rule out orbital/facial features.

At the hospital, Mr. Ward was diagnosed with right-sided facial fractures. It was recommended that he continue to apply ice to his injuries, take pain medication and basic antibiotics as directed, and follow up with an ear, nose, and throat specialist ("ENT"). A CT scan revealed comminuted fractures of the right orbit and a non-displaced zygomaticus fracture. Mr. Ward was discharged from Union Hospital later that same day with discharge instructions.

Upon discharge, Mr. Ward was transferred back to FCI Terre Haute, where he was seen at Health Services for medication reconciliation. The diagnosis of right side facial fractures was noted. He was prescribed amoxicillin and oxycodone/acetaminophen, and meloxicam was continued. These prescribed medications were consistent with his discharge instructions from Union Hospital.

On July 29, 2013, Mr. Ward was evaluated at Health Services by Dr. Roger Bailey, complaining of continued pain and swelling. His meloxicam was increased and his

oxycodone/acetaminophen was renewed. A consultation request was submitted to schedule Mr. Ward for an ENT consult. Mr. Ward was directed to return for reassessment in two days.

Two days later, on July 31, 2013, Mr. Ward was reassessed at Health Services by Dr. T. Bailey. Mr. Ward's vision and orbital travel were normal. He reported continued pain and numbness in distribution of the right inferior orbital nerve. On exam, Dr. T. Bailey documented symmetry of motor function and no facial asymmetry. There is a note that Mr. Ward was to have facial reconstruction as soon as the swelling subsides, but Mr. Ward had not yet seen the ENT, who would make that determination.

On August 28, 2013, Mr. Ward was evaluated at UAP Clinic by Dr. Fred Drake, an otolaryngologist, for an ENT consultation. Dr. Drake is an outside specialist that is not employed by the BOP. Mr. Ward reported to Dr. Drake that he was in no pain. On examination, Mr. Ward's eyes were normal. Dr. Drake reviewed Mr. Ward's CT scan and doubted that Mr. Ward would benefit from surgery since he was already aligned reasonably well. Dr. Drake concluded that surgery was not necessary.

Upon his return to FCI Terre Haute, Mr. Ward was seen at Health Services for medication reconciliation. The custody staff accompanying Mr. Ward reported that no surgery was recommended. Mr. Ward had no complaints at this time.

On September 5, 2013, Mr. Ward was seen at Sick Call by an RN, reporting right-sided face pain, and that his right eye socket hurt while chewing. Mr. Ward was then seen by PA Genevieve Shonkwiler on September 19, 2013, reporting pounding pain around his tempo-mandibular joint and temple area that was not resolving. On examination, Mr. Ward's pupils were equal, round, and reactive to light and accommodation and his extraocular movements were intact. There was mild tenderness on palpation around the temporal mandibular joint ("TMJ"),

but no deformity was noted. Mr. Ward was prescribed acetaminophen for pain. PA Shonkwiler discussed the results of the August 2013 ENT consult with Mr. Ward and that the specialist did not recommend surgery.

Five days later, on September 24, 2013, Mr. Ward was seen at Sick Call, wanting an MRI of his face. On October 7, 2013, Mr. Ward was seen by PA Shonkwiler at Health Services, reporting that the pain from his orbital fracture was still present and that he was having pounding pain around his TMJ and temple area. Mr. Ward stated that the Tylenol helped his pain, but he did not like to take pills. On exam, there was no facial asymmetry, swelling, inflammation, ecchymosis, or erythema, but there was pain on palpation in the temple region. Mr. Ward was directed to continue Tylenol as needed and instructed that the pain may last for some time.

On December 27, 2013, Mr. Ward was seen at Sick Call, complaining that he was still having aching pain in his right eye, jaw, and ear. Dr. T. Bailey subsequently evaluated Mr. Ward for eye/vision problems on February 7, 2014. Mr. Ward reported that, after his facial fracture, he later developed visual problems characterized by flashing lights in his right eye. There was still hypersensitivity to light touch over the temporal area. Dr. Bailey submitted a request for new radiology orders. Four days later, on February 11, 2014, an x-ray of Mr. Ward's facial bones was taken. The findings were negative.

On February 12, 2014, the Utilization Review Committee ("URC") denied a request for an ophthalmology consultation. Two days later, Mr. Ward was evaluated by Dr. Donald Auxier, a contract optometrist, for eye and vision problems. Mr. Ward reported seeing "lights like sparklers and dark in temporal peripheral vision" off and on since trauma to his right orbit and denied any pain in his eye or blurred vision. On examination, Mr. Ward's vision was normal and

his right retina was grossly normal with no retinal detachment, no retinal scars, and no vitreous floaters.

Over a year later, on July 7, 2015, Mr. Ward was seen by FNP-C Christopher Blila at Health Services, reporting ongoing significant sensitivity in the area around his eye. On examination, Mr. Ward's pupils were equal, round, and reactive to light and accommodation and his extraocular movements were intact. Although Mr. Ward reported hypersensitivity to the area around the right orbit, no instability was noted. Requests for new radiology imaging and an ophthalmology consult were submitted.

The URC approved a consultation for Mr. Ward's eye complaints on July 8, 2015. Mr. Ward was seen by an in-house optometrist. A single orbital x-ray of Mr. Ward was taken and the findings were negative.

Mr. Ward was seen by Dr. Auxier for an optometry exam at Health Services on October 9, 2015. Dr. Auxier performed a routine dilated exam, which was normal. Dr. Auxier recommended a follow-up in three to five years.

On behalf of the United States, Dr. Kevin B. Gebke, M.D., a family medicine physician employed by Indiana University Health and Indiana University School of Medicine as the Chairman for the Department of Family Medicine, OneAmerica Professor of Preventive Health Medicine, Director of the IU Center for Sports Medicine, and an Associate Professor of Clinical Family Medicine, reviewed Mr. Ward's medical records from FCI Terre Haute and opined that the medical care the BOP medical staff provided to Mr. Ward following his injury on July 27, 2013, was appropriate and within the standard of care. Dkt. 33-28 at ¶¶ 1-3.

Dr. Gebke considered the medical services provided to Mr. Ward while residing at FCI Terre Haute, including pain medication, access to Health Services, consultation with an

otolaryngologist, x-rays, and optometry exams. Dr. Gebke noted that once Mr. Ward was transferred back to FCI Terre Haute from Union Hospital, he was provided with pain medication and access to Health Services. Moreover, Dr. Gebke considered that Mr. Ward was seen by Dr. Drake, an otolaryngologist who thoroughly examined Mr. Ward for his orbital fractures and concluded that the fracture alignment was appropriate and that surgical intervention would not be necessary. Dkt. 33-28 at ¶¶ 5-9.

Dr. Gebke further pointed out that when Mr. Ward was seen by a physician assistant on September 19, 2013, and October 7, 2013, it was noted that Mr. Ward had no facial asymmetry or deformity and the only significant physical finding was tenderness over the TMJ. As Dr. Gebke also noted, x-rays taken of Mr. Ward's facial bones and a single orbit film performed in February 2014 and July 2015 were read as normal. And finally, Dr. Gebke recounted that Mr. Ward was seen in the optometry clinic in February 2014 and October 2015 and, on both occasions, was noted to have a normal vision exam. Dkt. 33-28 at ¶¶ 7-9.

After a review of Mr. Ward's medical records and his deposition, Dr. Gebke concluded that there is ample evidence that Mr. Ward had normal visual function and multiple providers noted normal facial symmetry without deformity. According to Dr. Gebke, Mr. Ward suffered a significant injury, which was undoubtedly painful, and he may very well continue to have pain and/or numbness associated with the injury to his trigeminal nerve, but this is by no means attributable to the care he received or any care that should have been provided. Dkt. 33-28 at ¶ 10.

Regarding Mr. Ward's two specific complaints about his care—that he should have received surgery as indicated by the emergency room physician and that he should have received an MRI—Dr. Gebke opined that Dr. Drake's recommendation of non-surgical intervention, as an

expert in ENT surgery, is consistent with the standard-of-care approach of primary care providers relying on expert consultants to guide specialty care. Dkt. 33-28 at ¶ 11. Dr. Gebke further opined that, although Mr. Ward may benefit from consultation to discuss pain management for the residual trigeminal neuralgia, surgical evaluation was not indicated. *Id.* at ¶ 12. In addition, Dr. Gebke determined that additional diagnostic testing, such as an MRI, is not indicated in the setting of normal ocular and visual functions and, thus, there was not a breach of the standard of care. *Id.* at ¶ 13. Ultimately, based upon his review of the records provided, Dr. Gebke concluded that Mr. Ward received appropriate medical services following his injury on July 27, 2013, while residing at FCI Terre Haute. *Id.* at ¶ 14.

### B. Legal Standards

Pursuant to the FTCA, "federal inmates may bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). State tort law of the state where the tort occurred, in this case Indiana, applies when determining "whether the duty was breached and whether the breach was the proximate cause of the plaintiff's injuries." *Parrott v. United States,* 536 F.3d 629, 637 (7th Cir. 2008). To prevail in a medical malpractice action under Indiana law, "the plaintiff must prove three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." *Whitfield v. Wren,* 14 N.E.3d 792, 797 (Ind. Ct. App. 2014) (internal quotation omitted). "[T]he standard of care for doctors practicing in prisons is the same as the standard of care for physicians practicing outside of prison." *Allen v. Hinchman,* 20 N.E.3d 863, 870 (Ind. Ct. App. 2014). "Summary judgment is appropriate in a negligence action where [the] defendant demonstrates that the undisputed material facts negate at

least one element of plaintiff's claim." *Halterman v. Adams County Bd. of Comm'rs,* 991 N.E.2d 987, 990 (Ind.Ct.App. 2013) (internal quotations omitted).

### C. Analysis

There is no dispute that the United States (BOP employees) owed a duty of care to Mr. Ward, as set out generally at 18 U.S.C. § 4042(a)(2) ("The Bureau of Prisons…shall provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons … convicted of offenses against the United States…"). The United States argues that it did not breach any duty of care and that Mr. Ward cannot establish causation.

Mr. Ward has not responded to the motion for summary judgment, so the Court must accept as true all material facts presented and supported by admissible evidence by the United States. The undisputed record demonstrates that Mr. Ward was provided with appropriate medical services after his facial fracture, including consultation with specialists, pain medication, x-rays, and optometry examinations. An otolaryngologist opined that surgery was not necessary because the fracture alignment was appropriate. No facial asymmetry or deformity was noted. When Mr. Ward was seen by an optometrist, he had normal visual function. An independent physician opined that the care provided to Mr. Ward was appropriate and in accordance with the standard of care.

Because the United States has negated the second element of a negligence claim--breach of duty--summary judgment is appropriate. *See Henderson v. Reid Hosp. and Healthcare Services,* 17 N.E.3d 311, 315 (Ind. Ct. App. 2014). The Court need not discuss the remaining element of causation under these circumstances.

In sum, the United States is entitled to summary judgment in its favor.

## IV.  Conclusion

Mr. Ward has not identified a genuine issue of material fact regarding his claim that the United States was negligent. In addition, the United States has negated one of the elements of Mr. Ward's claim. Therefore, the United States' unopposed motion for summary judgment [dkt. 33] is **granted.** Judgment consistent with this Entry shall now issue.

The Bureau of Prisons website indicates that Mr. Ward was released from prison on December 15, 2016. He has not reported a change of address, but the government's summary judgment papers include an additional residential address for Mr. Ward. The **clerk shall send a copy of this Entry and Judgment to both addresses** listed for him on the distribution of this Entry.

**IT IS SO ORDERED.**

Date: 3/29/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JERRY LEE WARD, 06269-090
Rock Valley Community Programs
203 W. Sunny Lane Road
Janesville, WI 53546

Jerry Lee Ward
3301 Lotheville Rd.
Madison, WI 53704

Electronically registered counsel

**NOTE TO CLERK: PROCESSING THIS DOCUMENT REQUIRES ACTIONS IN ADDITION TO DOCKETING AND DISTRIBUTION.**